Thank you, Your Honor. May it please the Court, my name is Michael Taylor on behalf of Petitioner Police Officer Roger King. The issue before the Court is whether it is reasonable for a police officer to use deadly force on an individual who is aggressively reaching towards his waistband, indicative of the presence of a weapon, while making threats and being noncompliant. The answer to this is yes. These are undisputed facts that the trial court found. Despite this, the trial court denied qualified immunity and decided that this is an issue that should go to the jury. This constitutes error for two reasons. The first reason is that the trial court erred in determining that Mr. Young was not an imminent threat to harm to Officer King. Secondly, the trial court erred in finding that the law at issue that governs this specific fact pattern was clearly established. In looking at the first argument that the trial court erred in its determination that Mr. Young was not an imminent threat of harm to Officer King, there's two alternative basis for why the trial court erred with respect to this. The first is that the trial court erred by relying upon facts that were blatantly contradicted by the record to reach this conclusion. The second reason is that even if you take the facts that the court relied upon, which are blatantly contradicted by the record, the court failed to look at the totality of the circumstance facing Officer King in denying qualified immunity. Looking at the facts that were blatantly contradicted by the record, the court found that Mr. Young was stationary or standing still at the time that Officer King used force. This fact was admitted in the response by the respondent as being wrong. The trial court did err with respect to the fact that Mr. Young was stationary at this time. There's no evidence in the record that Mr. Young was stationary. Officer King testified that Mr. Young was advancing towards him. The expert hired by the plaintiff to recreate the accident could not rule out whether Mr. Young was moving at the time of the shooting, could only identify that he was not running at the time of the shooting. So despite the fact that the only evidence in the record is that Mr. Young was advancing towards Mr. Officer King, why is there evidence in the record of that? Help me understand that, right? Because your client says he was charging at me, and this is at this stage. I'm not saying there's not evidence from which a jury can, but at this stage, your client says he was charging at me and he described what charging meant to be running in his, I'm just reading his words, right? He used the words running when asked what charging means. At different points, he used different words, but at least once he used the word running. And the expert says, no, that's not true, right? And then your client says he was eight to 10 feet away from me when I shot him. And the expert says, no, not true. And those may be really good jury arguments, but don't I have to take both of those in the light against you, which means that the officer is not telling the truth about the distance or the mode or manner in which the defendant was moving at the time he was shot. And if that's true, then I'm having a really hard time. I get your other arguments, but I have a hard time seeing how you get very far given that scenario. I understand, your honor. Well, here's where we're at is that we know that the undisputed record is that there was movement by the victim, Mr. Young, because their expert said, I cannot rule out that he was moving forward or backward. But can't rule it out is not the same as showing that it happened. I get you want to say that. I understand. And you say that they concede it. I don't think they conceded at all. But my point is, go back to what is happening, right? Your client said he's running at me and I shooting when he's eight to 10 feet away. And the forensic evidence, at least as this expert suggests, is that that was false. Well, your honor, the forensic evidence with the eight to 10 feet that the forensic evidence is or the expert's opinion on the forensic evidence on eight to 10 feet is, well, that that was not true. That for the forensic evidence on whether he was moving at the time, I don't know. No, he said he's not running. But correct your honor. But he also said that he was not moving. But irrespective of the speed upon which all of these arguments you make the jury. But what I'm trying to get at and maybe the end and I don't push it too hard because sometimes the answer is you got a client and there's just nothing you can do with it. Right. But those two things, I'm having a hard time. So hypothetically, if I found on this record at this stage of the proceeding that your client falsely claimed he was eight to 10 feet away and falsely claimed that he was running toward him and instead he was not running toward him, whatever the movements he was doing and was 50 feet away. How could I possibly reverse the district court here? Because that fails to take into the other actions by Mr. Young that were going on the victim at the time, which the most aggressive action in which the trial court described as an aggressive action of grabbing towards his waistband, which is indicative of 50 feet away at the time that Mr. Young makes this action. But Officer King didn't describe it that way. Officer King, he said there was he was flailing his shirt. I didn't see anything, so I didn't think much of it. He did mention at one point I drew my weapon because you never know he might have something. But that's not when he shot. He drew his weapon and he had his weapon out for a while. Then come the shots and there's no, I didn't see any testimony in the record that at the moment he shot, he thought the victim was reaching for something. He said he has testimony that he could have had something. You never know. You can't rule it out. That's all his testimony after the fact about what might have happened. But I didn't see any testimony that's as clear as what you're trying to say now. Well, and that that may be fair, Your Honor. But I think if you if you look, though, and you have so what what is happening is we have statements that are made after the shooting that are jumbled by Officer King that are jumbled. They're not clear. It's not a deposition at that time where they're trying to pin him down on specific details. He's just in an emotional state giving a statement that's not being clarified. Right. And in one version of those may be more correct than another version. That's absolutely right. But at this stage, don't we have to take the facts and the light most favorable to the victim? You do, Your Honor. But I don't think the facts create per se an inconsistency. There's just a lack of clarity in his statement upon which the plaintiffs want to rely upon. And then those those issues get clarified in his deposition. And he clarifies what he means by these things. It's a lack of clarity. Maybe that's an argument you can make to a jury. Right. No, no, no, no. He was just really upset. And when he changed his story, it was just a clarification. It wasn't an inconsistency. Those are like totally reasonable arguments and they might well be right. But how do we adopt those instead of drawing the inference the other way, which is he changed his story to try to match it up with what had happened? Again, the evidence, though, that they try to use to show that, geez, there's all these inconsistencies is forensic evidence by an expert that even the forensic evidence gets changed in the deposition about where the movements are, the distances upon which where this the shootings occurred. The 50 feet, for example, is another issue upon which that their own expert upon deposition questioning, hey, if Officer King said he was backpedaling at the time this occurred, does that change the direction upon which that the calculation? And he said unequivocally, yes, it does. And so that problem is you got to if in that sentence. Right. And the record doesn't actually show that he was backpedaling when he fired. Actually, your honor, I disagree. I understand that you disagree. And I've read where you're reading. But if I'm reading the information, the light most favorable to the decedent. Right. I don't read those sections. As saying when he fired, he was backpedaling. It does say that he backpedaled, but it does not say that when he's fired, when he fired, he was backpedaling. I don't read them that way, at least given the the context in which we have to take them against you to the extent reasonable. Your honor, if I'm not mistaken, he in both his statement to the investigator afterwards and to the and to the in the deposition, he testifies he was backpedaling at the time that he was shooting. And and I don't think there's even a dispute about that because the bullet casings show movement on the part of Officer King and his test. I mean, so so with that said, I mean, it's kind of this is a situation where there's only one inference that can be made. The bullet case. There's not a follow up question in that position. The answer. The question is, would it change your opinion about the direction if he were backpedaling? Yes. But the obvious question next is what what would it be? Would you agree with the decedent then? But there's no there's no follow up to tell me. Oh, well, the answer would be completely different and that and I have to even constrain in favor of the decedent. The officer is correct. But I think in the question, it says, would it change your opinion as to whether he was moving forward in an east to west direction versus a west? And he said yes. And so it's like which direction? Yes. And I think that was in the questioning. But with all of that said, these are all the factual disputes that may or may not be at issue. But if you go to our other argument, which is the law at issue has to be clearly established at the time upon which the officer engaged in these acts. So even if you want to have these factual discrepancies, which, by the way, this court has affirmed of qualified immunity when there has been certain factual discrepancies evolving, whether the officer, whether a person was stumbling or or town of Chapel Hill case is almost exactly on point here where there was a factual dispute as to whether the end of the suspect at that time was advancing towards an officer, whether he had his hands up in surrender and the officers testified that it looked like he was moving towards them. And that's why they fired their weapon. And bystanders said he had his arms up in surrender in this. The Fourth Circuit said that does those disputes do not matter. It's the officer perception at the time of the shooting that we have to look at as to what occurred. So even if there is a factual dispute over was he charging or was he advancing forward at a speed less than running was, those are we have to look at the officer's perception at the time. We don't apply 2020 hindsight with respect to that. And the Sigman v. Chapel Hill case is almost directly on point. And in that case, the court affirmed and said qualified immunity in this case. Now, the cases that were relied upon by the district court are all not miss key facts that were present here, namely the indication of a weapon. The fact is, is that Officer King repeatedly said in his statement and in his deposition, yeah, I did not see a weapon. I didn't rule it out. I didn't rule it out. And the fact of the matter is Mr. Young had a weapon. He ended up having a knife on him. So so looking at the totality of the circumstances, even if he was standing still at 50 feet away, even if he was not moving and he was stationary, the fact he going to a weapon indicates to the officer in his perception he may have a weapon. I need to protect myself. And that's what the case law says. It's not a suicide. Can you help me? Can you help me just for the record site that you would like us to look at? Because I see the repeated reference to when when he shot the decedent that the decedent was charging at him. But at that moment, what is the record site that he was reaching into his waist for a weapon that that was the perception of this officer? OK, so and by the way, the district court accepted just the right. I just want the record. So all I'm looking for is I just want to see what it is that I'm reading that at that moment in time, the officer perceived that he was reaching for a weapon. I apologize, your honor, I should have flagged it better, but I know it's in. It's OK, you can bring it up on on rebuttal, that'll be OK. But if you don't mind providing that when you come back up for a response, I'd appreciate absolutely your honor. Thank you. And that's I think basically my time. We request that you'd reverse the trial court's ruling in an order affirming or granting some reach up qualified immunity. Thank you, your honor. Mr. New, we're happy to hear from you. May it please the court, your honors. My name is Stephen New. It's my pleasure. And privileged to be here today representing the family of Eric Mitchell Young. This honorable court should affirm the district court's denial of summary judgment. In this case, there was no reasonable objective reason for Officer King to believe that Mr. Young posed an immediate threat of serious bodily harm to him. The appellant's claims are unsupported by the record and should not be condoned by this court. The district court for the Southern District of West Virginia correctly denied the appellant's motion for summary judgment seeking qualified immunity. Judge Copenhaver, applying the well-established facts in this record as he was required to in the light most favorable to the non-moving party and the district court properly found that questions of fact exist and found that Officer King's deadly actions were not or I'm sorry were objectively unreasonable. The force used excessive under Graham v. Connor and the district court also found that Mr. Young's Fourth Amendment rights plainly violated by Officer King and clearly established at the time of the shooting in the early morning hours of February 11, 2019 in the streets of Montgomery, West Virginia. Of course, the standard of review in this case is a de novo standard of review and as Judge Richardson has already pointed out that courts must neither resolve disputed facts nor weigh the evidence nor make determinations of credibility. Decades of case precedent, the party opposing the motion is entitled to have his or her version of the facts accepted as true and moreover to have all internal conflicts resolved in his or her favor and indeed what's happened here is that the police officer has killed the only other potential witness to the shooting and courts have been cautioned to avoid simply accepting officer testimony as true. With respect to the facts in this case, Judge Copenhaver sets forth the facts at pages 2 through 10 of the order denying summary judgment document 142 and I'd like to just touch on some of those facts in follow-up to some of the questions by this court and the citation asked for appears at page 3 of the memorandum opinion and Judge Copenhaver stated in addition Young repeatedly flailed his arms and his shirt which Officer King testified caused him to suspect aggression and the potential that Young could be reaching for a firearm in his waistband. That's Officer King's statement in the hours after the shooting and his deposition testimony at pages 52 and 61. The court goes on but Officer King never saw a weapon in Young's waistband and never saw Young wield a weapon. In viewing the facts in the light most favorable to the non-moving party here the court did not as the appellant suggests blatantly disregard facts that were blatantly could readily conclude violated Mr. Young's rights under the fourth amendment. Number one that Officer King was initially 50 feet away from Mr. Young when he opened fire. Number two Officer King then fired four more rounds as Mr. Young was falling to the ground firing the last It's interesting that in one part of Officer King's testimony he says that he was backpedaling and in another part of Officer King's statement and testimony in his deposition he says that he was up against a curb. Well which is it? Which is it? So the movement by the officer we know by Dr. Bowers forensic examination. Can you, sorry to interrupt you, yes your honor, can you address maybe the the question that I asked your your colleague to the you know you know the record better than better than we do but in the the two statements that at least that I can think about as I'm sitting here the post statement and the deposition in there is discussion about flailing and picking at the shirt but none of that corresponded to the moments before the victim was shot. Is that accurate? That is accurate your honor. There is no indication and this is not a split second type thing. Officer King followed Mr. Young around to the front of Montgomery City Hall and down 3rd Avenue and so where exactly and when exactly Mr. Young was flailing at his shirt is unclear. It's not clear from the record that that was in the the seconds and the moments leading up to the shooting. When you when you say it's not clear I guess not help me understand what you mean by that. What I mean is there is there anything that I thought it was clear the other way that that hadn't happened but I'm trying to figure out what you mean by it's not clear. The only thing that I mean there is I don't think that Officer King ever testified that he was picking at his shirt or as it became now uh reaching in his waistband just in the seconds just before the firing of the weapon your honor that that's all I meant by that. Uh third the district court found Mr. Young stationary when the shots were fired and not charging Officer King. Again our expert Dr. Bauer doesn't say that uh and again conceded that he couldn't rule out that Mr. Young was moving. What is that moving? Was that movement to the side having to do with the bullets entering and exiting the deceased's body? Uh what Dr. Bauer could definitively definitively rule out was that Eric Young was not as Officer King says charging the officer in a closing distance of about eight to ten feet. Uh Mr. Young was not wielding a weapon or known to be carrying a weapon. Officer King was noticeably larger in physical size. Fact number six found by the district court Mr. Young was suspected of committing non-violent misdemeanors prior to the shooting. And finally fact seven there's no evidence that anyone else was in the area at the time of the shooting. There's ample evidence in the record to support these findings by the district court. Moreover these factual findings apply to Tennessee v. Garner, Graham v. Conner and this court's case progeny the denial of summary judgment was correct. I won't belabor the qualified immunity excessive force standards under Graham but I would like to go through the Graham factors that the district court used in the a right of free citizens to be free from excessive force in the context of an arrest or investigatory stop. And this court will look at the severity of the crime at issue whether the suspect poses an immediate threat to the safety of the officers or others and whether he's actively resisting arrest or attempting to evade. And in this case the court went through each of those Graham factors under prong one the severity of the crime at issue. Officer King admits during his deposition that Mr. King was a non-violent misdemeanor suspect at the time of the shooting and indeed I would question whether any crime was committed. What was Mr. Young guilty of? He had looked into a police cruiser. Now officer King testifies that he had tried the door handle but it wasn't as if Mr. Young had a tire ironed out and had crashed the window of the police cruiser. So at a minimum you have either no crime being committed or a non-violent misdemeanor offense of some attempt at a vehicular break-in maybe trespassing on police property. Under Yates versus Terry the first Graham factor weighs in favor of the plaintiff who commits a non-violent offense. The next factor whether the suspect poses an immediate threat to the safety of the officers or others. Eric Young did not pose an objective immediate threat of serious bodily harm to Officer King or anyone else. Officer King testified he saw no weapon. He had no reason to believe that this suspect was armed and Officer King opened fire on Mr. Young from 50 feet away then fired four additional rounds. Factually what's happened here according to Dr. Bauer is Officer King moved in a semi-circle type motion toward Eric Young closing the distance to within 25 feet when the final shots were fired. And this case is most like Wilson versus Prince George's County 893 F 3rd 213 at page 220 where this court decided in June 2018 and I'll come back to that date in just a moment this court found that a jury could determine that a plaintiff standing 20 feet away and armed only with a or others rendering the officer's lethal force constitutionally unreasonable. Whether the suspect is actively resisting or attempting to evade arrest. In this case we know that Eric Young walked away from the scene and walked away from the officer a number of times. I believe that my face and kept walking. The taser was attempted on Eric Young. He was wearing a Carhartt in February in West Virginia. It's cold that could be a reasonable reason why the officer's taser did not work. And again the record is unclear exactly of what crime Officer King suspected. We only know that Officer King thought that it was a non-violent misdemeanor. Can I ask you another factual question? Yes your honor of course. So when I try to read through the expert reports particularly of Mr. Bauer at some points he seems to suggest by reference to an east-west direction that the officer here was not going backward but is instead going forward toward the victim. Is that what you understand the expert's testimony to have suggested? Yes your honor in kind of a that are listed in in figure nine of of one of his reports that the casings that move toward the where the body is the expert suggested that the furthest one away was the first shot fired and that in fact the the defendant was moving toward Mr. Young. Yes your honor. Okay uh finally uh with the the final gram factor before I move into the clearly established right uh obviously these are fatal injuries uh sustained by Eric Young. Under prong two the district court correctly decided that Mr. Young's fourth amendment rights were clearly established and this court has held that the contours of a right become clear when an issue has been authoritatively decided by the supreme court or the appropriate United States court of appeals and we have the general rules under Graham and Garner and then we also have clearly established rights under case law. I mentioned Wilson versus Prince George's County and I brought that case up for a specific reason. That case was decided in June of 2018. That also happened to be the very month that Officer King was hired by the city of Montgomery. Officer King had worked in Chesapeake, West Virginia at that municipal police department from 2016 to June of 2018. In the very same month that Officer King is hired in Montgomery this court stated an officer would violate a suspect's fourth amendment right to be free from excessive force by shooting a person who one was suspected of having committed a burglar in a battery two was standing about 20 feet from the officer holding a knife inflicting harm on himself and stumbling but not threatening others or making sudden movements three was refusing to obey the officer's repeated commands to drop the knife at the time he was shot. We therefore conclude that Officer Gill is entitled to qualified immunity. We emphasize however that as of the date this opinion issues law enforcement officers are now on notice that such conduct constitutes excessive force in violation of the fourth amendment. That is why Eric Young's rights were clearly established at the time of the shooting in February of 2019. And I know that the case was decided after but this court's city of Martinsburg a 2020 case this court said enough is enough enough of an is enough of the supposed fear-based officer shootings of unarmed people. Eric Young was 50 feet away not charging posing no immediate threat to Officer King. Officer King skipped other non-lethal methods of detaining Eric Young and fired four shots at him closing distance from 50 feet to 25 feet as Eric Young fell to the ground. Under these circumstances there was no objective objectively reasonable reason for the officer to do this. So based on all of these factors we respectfully request and pray that this court affirm Judge Copenhaver's denial of summary judgment on qualified immunity grounds and remand this case. Thank you. Thank you counsel. Mr. Taylor we'll hear from you. Yes. Your honor to answer your question you left me with joint appendix 60 is the deposition testimony where he discusses the flailing joint appendix 342 is his written statement or I'm sorry his statement after that where he discusses it and joint appendix 352. Those were just some of the references I found where he discusses the flailing. At the moment he's so the challenge is as he says he charges at me he puts his I think what he says he puts his hands up threw his hands up and charged at me and I shot him in his in his deposition and what I don't see is I see at other points the claim of flailing but I don't see at and around the time he's charging that he is both charging and reaching into his waistband. Do you understand the distinction I'm trying to make? I do your honor and at 352 the last question on there I won't read the whole paragraph but it says and when he started flapping his shirt up and down I thought he was going to reach for a gun or he's going to have something so that's why I pulled my gun out in fear that he had something and then when he charged I had no other choice so it seems to me that it's happening split second decision making time it may not be while he's physically charging but he's flailing towards this and then it's a split second judgment he has to make as to what is going on here he's in fear for his safety here and it's not just this is not just he's saying I'm in fear of my safety here this is not one of those cases where he just declared I'm in fear of my safety and I'm going to shoot this man what happened is he's sitting in his office at 4 30 in the morning and he hears to to be frank I won't say this can I say that I understand your your your closing argument point but I can I say that if I find that the officer was moving toward young and young was not charging toward him as a factual matter yes at summary judgment yeah that's what I can't yes your honor if you look at the cases we relied upon see this is this isn't a case where where you're the case this isn't a case that is like any of the cases that the district court relied upon because in those cases they knew the type of weapon that the individual had for example in Wilson v Prince George the officer knew he had a knife and he was using the knife on himself this is one of the cases and this is more like Anderson v Russell where but the problem with Anderson and the rest of those cases is we don't have evidence that your client was telling false exculpatory claims right he wasn't falsely claiming and I'm not I'm not saying as a factual matter that your client is false right I'm talking about the inferences that I must draw given where we are your client falsely claimed I was afraid because he was charging at me and he got to within eight or ten feet before I shot him and I have to assume that both of those things are false which means it makes it really hard to believe anything else he says right but but also at this but now you're making credibility determinations yes I'm making credibility determinations against your client because that's the reasonable inference for the plaintiff correct but there's nothing to dispute so what you're you're you're taking evidence that's in the record to dispute what my officer said regarding the distance and the movement okay fair accept those okay but the rest of the record evidence is the record evidence and the court has to accept the record evidence if there's nothing to dispute it the court does not understand the argument you're making is if someone makes numerous false exculpatory statements this court must accept all other statements that cannot be definitively proven as false that doesn't seem like the way we actually do it this the court any court does not weigh credibility and that's a credibility determination so so we do so at the end of the day we know that the op that the individual was shot right and my officer said he was shot so we have to accept that he was shot we're going to we don't have to accept your officer's word we've got an autopsy okay uh we have showcasings that show that as well we have a knife on mr young and multiple witnesses other than my uh client uh indicated there was a knife there was a co-defendant that was released out that was actually the one that bagged the knife um so we know that he had a knife so we know that he he had some sort of weapon we we know that he's flailing his shirt there and so at that point in time he's making it let me let me ask this would it would it be fair if he pulled that pocket knife out 50 yards away standing still could could the officer execute him at that point no your honor but in this and i see i thought no i just wanted to make you just keep coming back to the knife i don't know why the knife is relevant because it indicates my officer had a reasonable belief he had a weapon on him and it turns out he was correct he didn't know what kind of weapon because he could not determine the weapon it's much like in anderson v russell where they made a movement this is a we don't know the presence of the weapon type situation he makes the movement and that's when it's not like those cases that there you have testimony that he makes the movement and as he makes the movement i pull out my gun and shoot right because it's the movement you're exactly right we've said in cases it's the furtive movement that gives the suggestion he has a weapon i'm in danger there's not that testimony here and i know you say you know it could be crystallized we could make it clearer but again we have to draw we have to allow for the possibility that the jury could not believe your client right we have to allow for the possibility of even taking everything that your client says there's actually not testimony from your client that's that clear about uh when when this flailing was happening he pulled his weapon out the officer testified that he pulled out his gun and then followed mr young for a while that it wasn't he pulled it out and shot so if he's if the flailing's happening when he pulls out his gun that doesn't help you well your honor just all i'll say is to to end is there has to be a case on point that puts this beyond dispute and we've cited to segment anderson that call into question the actions this may be a case like in wilson v prince george county that that they relied upon where uh the court granted qualified immunity in wilson because they said there was not a case on point this is between a case of clem and sigmund and so because it's not on point we're going to grant qualified immunity like wilson except that almost every prong of the analysis there's less to go on they weren't violent misdemeanors they were non-violent in wilson there was a knife and he was flailing it around here there no weapon was presented i mean there it's like wilson but in in a way that doesn't favor you no weapon was presented but no weapon was determined that there was no weapon presented it's one of those where we the officer did not know and it's that's why it's more like anderson your honor thank you thank you counsel as you uh know having been in here we wish we could come down and uh greet you in person and thank you uh for your uh help with this case uh we hope that we'll be able to do so when we return
judges: Julius N. Richardson, Allison J. Rushing, Sherri A. Lydon